<pre>
1
2
3
4
5
6
7                   UNITED STATES DISTRICT COURT
8                   EASTERN DISTRICT OF CALIFORNIA
9
   LAWRENCE REMSEN,            ) 1:12-cv—00731-BAM-HC
10                             )
                 Petitioner,   ) ORDER DISCHARGING ORDER TO SHOW
11                             ) CAUSE (DOC. 5)
                               )
12        v.                   ) ORDER DISMISSING SOME CLAIMS IN
                               ) THE PETITION WITHOUT LEAVE TO
13   J. HOLLAND, (A) Warden, et) AMEND (DOC. 1)
     al.,                      )
14                             ) ORDER GRANTING PETITIONER LEAVE
                 Respondents.  ) TO FILE NO LATER THAN THIRTY (30)
15                             ) DAYS AFTER SERVICE A FIRST
   _____) AMENDED PETITION WITH RESPECT TO
16                               PETITIONER'S EX POST FACTO CLAIMS
17                               DEADLINE FOR FILING FIRST AMENDED
                                 PETITION:
18                               THIRTY (30) DAYS
19
20        Petitioner is a state prisoner proceeding pro se with a
21   petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.
22   Pursuant to 28 U.S.C. § 636(c)(1), Petitioner has consented to
23   the jurisdiction of the United States Magistrate Judge to conduct
24   all further proceedings in the case, including the entry of final
25   judgment, by manifesting consent in a signed writing filed by
26   Petitioner on May 17, 2012 (doc. 4).  Pending before the Court is
27   the petition, which was filed on May 7, 2012.
28
</pre>

1      I.   <u>Discharge of the Order to Show Cause</u>

2          On May 24, 2012, Petitioner responded to this Court's order

3  to show cause why the petition should not be dismissed for

4  failure to exhaust state court remedies.  Petitioner did not

5  provide the Court with copies of the full petition or petitions

6  filed in the California Supreme Court.  Therefore, it is not

7  clear that Petitioner exhausted all state remedies.  However, the

8  Court will proceed to screen the petition to the extent possible

9  at this juncture and will discharge the order to show cause.

10     II.  <u>Screening the Petition</u>

11         Rule 4 of the Rules Governing § 2254 Cases in the United

12  States District Courts (Habeas Rules) requires the Court to make

13  a preliminary review of each petition for writ of habeas corpus.

14  The Court must summarily dismiss a petition "[i]f it plainly

15  appears from the petition and any attached exhibits that the

16  petitioner is not entitled to relief in the district court...."

17  Habeas Rule 4; <u>O'Bremski v. Maass</u>, 915 F.2d 418, 420 (9th Cir.

18  1990); <u>see</u> <u>also</u> <u>Hendricks v. Vasquez</u>, 908 F.2d 490 (9th Cir.

19  1990).  Habeas Rule 2(c) requires that a petition 1) specify all

20  grounds of relief available to the Petitioner; 2) state the facts

21  supporting each ground; and 3) state the relief requested.

22  Notice pleading is not sufficient; rather, the petition must

23  state facts that point to a real possibility of constitutional

24  error.  Rule 4, Advisory Committee Notes, 1976 Adoption;

25  <u>O'Bremski v. Maass</u>, 915 F.2d at 420 (quoting <u>Blackledge v.</u>

26  <u>Allison</u>, 431 U.S. 63, 75 n.7 (1977)).  Allegations in a petition

27  that are vague, conclusory, or palpably incredible are subject to

28  summary dismissal.  <u>Hendricks v. Vasquez</u>, 908 F.2d at 491.

1    Further, the Court may dismiss a petition for writ of habeas

2  corpus either on its own motion under Habeas Rule 4, pursuant to

3  the respondent's motion to dismiss, or after an answer to the

4  petition has been filed.  Advisory Committee Notes to Habeas Rule

5  8, 1976 Adoption; see, Herbst v. Cook, 260 F.3d 1039, 1042-43

6  (9th Cir. 2001).

7    A petition for habeas corpus should not be dismissed without

8  leave to amend unless it appears that no tenable claim for relief

9  can be pleaded were such leave granted.  Jarvis v. Nelson, 440

10  F.2d 13, 14 (9th Cir. 1971).

11    III.  Background

12    Here, Petitioner alleges that he is an inmate of the

13  California Correctional Institution at Tehachapi (CCI) serving a

14  sentence of fifteen years to life[1] plus five years imposed in

15  1983 in the Los Angeles County Superior Court for second degree

16  murder and multiple counts of forgery and theft in violation of

17  Cal. Pen. Code §§ 187, 470, and 487.  (Pet. 1, 8.)  Petitioner

18  challenges the decision of California's Board of Parole Hearings

19  (BPH) made after a hearing held on March 19, 2008, finding

20  Petitioner unsuitable for parole.

21    Although Petitioner lists only four grounds in the form

22  portion of the petition (doc. 1, 5-6), a review of the entirety

23  of the petition shows that Petitioner appears to raise additional

24  claims or sub-claims.  The claims that appear to be raised in the

25

26    _____

27  [1] Although in various parts of the petition, Petitioner asserts that he
   did not receive a life sentence and rather received a twenty-year term, the
   Court notes that pursuant to state law, an indeterminate life sentence is in
28  legal effect a sentence for the maximum term of life.  People v. Dyer, 269
   Cal.App.2d 209, 214 (1969).

petition are as follows:  1) the finding that Petitioner was
unsuitable for parole because he presented an unreasonable risk
to the public safety was a violation of Petitioner's rights to
substantive due process and equal protection guaranteed by the
Fourteenth Amendment because it was unsupported by the evidence;
2) Petitioner was denied a fair and impartial hearing because the
BPH failed to recognize its statutory limitations and was not
impartial; 3) the failure to release Petitioner on parole
violated Petitioner's right to due process and equal protection
because when sentenced he was told that he could not serve more
than fifteen years; 4) the determination of the length of
Petitioner's sentence by the BPH exceeds the BPH's authority
because it is a legislative function, and it results in an
absence of uniformity of sentence and a violation of Petitioner's
right under state law to have his sentence set on the basis of
proportionality of the offense and earned credits; 5) the failure
to provide annual parole hearings as was done when Petitioner was
convicted is an incorrect interpretation or application of state
law; 6) changing the parole rules after Petitioner's conviction
(e.g., unspecified differences in standards, greater time periods
between parole hearings, and deprivation of the right to a jury
trial on dangerousness) violated the prohibition against ex post
facto laws under the Constitution and the state constitution; 7)
the application of Cal. Pen. Code § 3041 to Petitioner violates
Petitioner's right to substantive due process and equal
protection because Petitioner is not serving a life sentence
under state law; 8) Petitioner's right of contract and right to a
reduction of his sentence were denied when his agreement with the

state pursuant to Cal. Pen. Code § 2931 was violated; 9) under the state laws enacted in 1977, the BPH was without the authority to enact or apply to Petitioner rules and regulations concerning release on parole other than to credit Petitioner's earned good time credits; 10) Petitioner's First Amendment rights were violated because Petitioner never received a ruling on the merits of his claims; 11) Petitioner's rights to a jury trial and proof beyond a reasonable doubt on the issue of his dangerousness were violated; and 12) because Petitioner is serving a sentence longer than that which a person convicted of the more serious offense of first degree murder would serve, Petitioner has been deprived of the uniform operation of the laws under state law and in violation of his right to equal protection.

Petitioner's parole hearing was held on March 19, 2008, before a commissioner of the BPH and a deputy commissioner; Petitioner chose to appear without counsel and confirmed that his rights concerning the hearing had been met.  (Pet. 80-83, 88.) Petitioner was given an opportunity to correct or clarify the record, and he submitted a work record, a notice regarding the jurisdiction of the BPH, and a copy of his "current case" pending in the Eastern District after the case was transferred from the Central District.  (Id. at 87, 90-91, 153.)  Petitioner affirmatively stated that he had no objection to the panel.  (Id. at 89.)

Petitioner initially declined to discuss the commitment offense, which Petitioner attributed to his heavy drinking.  The offense involved the disappearance of an extremely wealthy woman for whom Petitioner served as a business manager, followed by

Petitioner's fraudulent sales of the victim's real estate, conversion of her funds, and attempt to purchase a vehicle for over $100,000.  Petitioner stated that after he accompanied the victim to Las Vegas, the victim returned to Los Angeles alone, and when Petitioner returned in her car, he found her dead in her home, and he buried her at sea in a rubber raft with weights attached.  No body was ever found.  Petitioner did not report the death because he wanted to finalize some deals and felt he had something coming.  The victim's usual activities suddenly ceased around the time of the alleged trip to Las Vegas.  (Id. at 98-102.)

Petitioner had been previously convicted of exhibiting a deadly firearm to a hitchhiker who had stolen his wallet, trespassing, and carrying a concealed weapon in a vehicle.  (Id. at 103-04.)  Petitioner had an extraordinary disciplinary record and a good work record but no formal vocational education and no recent self-help programs. (Id. at 114-21, 129-30.)  The psychological evaluator reported that Petitioner stated that he was not guilty of the charge; the evaluator concluded that Petitioner was in a low risk category for violence, relapse into alcoholism, or recidivism.  The extent of Petitioner's exploration and coming to terms with the commitment offense was not addressed because Petitioner asserted his innocence.  (Id. at 126-30.)  When asked at the parole hearing if he was guilty of any crime in connection with the victim's death, Petitioner testified that at the very worst it would be voluntary manslaughter or manslaughter and not second degree murder because Petitioner pushed the victim in response to her having hit

Petitioner over the head with a dust pan, and she fell down the
stairs, although Petitioner did not do it intentionally or
vindictively.  Petitioner believed she broke her neck in the
fall, but Petitioner was too scared to summon help, and he buried
her a day or two later.  Petitioner asserted that he came from a
very wealthy family and did not know why he committed the
financial crimes after the victim's death.  (Id. at 135-40.)

The BPH denied parole for two years and stated in
Petitioner's presence that it found that Petitioner posed an
unreasonable risk of danger to society or a threat to public
safety if released because of the cruel and callous commitment
offense committed against an elderly victim with whom Petitioner
was in a relationship of trust, Petitioner's failure to
participate sufficiently in self-help programs related to
alcohol, and Petitioner's criminal record.  (Id. at 156-62.)

IV.   Failure to State a Due Process Claim concerning the
Evidence that Would Entitle Petitioner to Relief

Petitioner argues that the finding that Petitioner was
unsuitable for parole because of an unreasonable risk to the
public safety was a violation of Petitioner's rights to
substantive due process and equal protection guaranteed by the
Fourteenth Amendment because it was unsupported by the evidence.

Because the petition was filed after April 24, 1996, the
effective date of the Antiterrorism and Effective Death Penalty
Act of 1996 (AEDPA), the AEDPA applies in this proceeding.  Lindh
v. Murphy, 521 U.S. 320, 327 (1997), cert. denied, 522 U.S. 1008
(1997); Furman v. Wood, 190 F.3d 1002, 1004 (9th Cir. 1999).

A district court may entertain a petition for a writ of

7

1  habeas corpus by a person in custody pursuant to the judgment of
2  a state court only on the ground that the custody is in violation
3  of the Constitution, laws, or treaties of the United States. 28
4  U.S.C. §§ 2254(a), 2241(c)(3); Williams v. Taylor, 529 U.S. 362,
5  375 n.7 (2000); Wilson v. Corcoran, 562 U.S. –, -, 131 S.Ct. 13,
6  16 (2010) (per curiam).

7      The substantive component of due process protects against
8  governmental interference with those rights "implicit in the
9  concept of ordered liberty." Palko v. Connecticut, 302 U.S. 319,
10 324-25 (1937).  It forbids the government to infringe fundamental
11 liberty interests, such as the right to liberty, no matter what
12 process is provided, unless the infringement is narrowly tailored
13 to serve a compelling state interest. Reno v. Flores, 507 U.S.
14 292, 301-02 (1993).

15     Here, Petitioner has failed to allege facts warranting a
16 conclusion that the BPH's decision infringed a federally
17 protected, fundamental right.  Petitioner simply concludes that
18 the action of the BPH, which was undertaken in accordance with
19 procedures that satisfied the requirements of procedural due
20 process of law,[2] violated his right to substantive due process of
21 law.  Petitioner's conclusional allegations do not
22 state facts that point to a real possibility of constitutional
23 error.

24     Further, it is established that even where state law creates
25 a liberty interest in parole, there is no federal right to be

26

27     [2] See, Swarthout v. Cooke, 562 U.S. –, 131 S.Ct. 859, 861-62 (2011)
   (holding that the procedures required for a parole determination are the
28 minimal requirements set forth in Greenholtz v. Inmates of Neb. Penal and
   Correctional Complex, 442 U.S. 1, 12 (1979)).

conditionally released before the expiration of a valid sentence. Roberts v. Hartley, 640 F.3d 1042, 1045 (9th Cir. 2011) (citing Swarthout v. Cooke, 131 S.Ct. at 861-62). In Swarthout v. Cooke, the Court unequivocally determined that the Constitution does not impose on the states a requirement that its decisions to deny parole be supported by a particular quantum of evidence, independent of any requirement imposed by state law. Roberts v. Hartley, 640 F.3d at 1046; Pearson v. Muntz, 639 F.3d 1185, 1191 (9th Cir. 2011). A state's misapplication of its own laws does not provide a basis for granting a federal writ of habeas corpus. Roberts v. Hartley, 640 F.3d at 1046.

Thus, although Petitioner asserts that his claims are based on a right to substantive due process, it is recognized that there is no substantive due process right created by California's parole scheme; if the state affords the procedural protections required by Greenholtz and Cooke, the Constitution requires no more. Roberts v. Hartley, 640 F.3d at 1046.

Accordingly, Petitioner's substantive due process claim will be dismissed. Further, because it does not appear that Petitioner could allege a tenable substantive due process claim if leave to amend were granted, the claim will be dismissed without leave to amend.

It may be that Petitioner is actually arguing that the BPH's finding violated procedural due process because of a lack of evidence to support the finding. The Supreme Court has characterized as reasonable the decision of the Court of Appeals for the Ninth Circuit that California law creates a liberty interest in parole protected by the Fourteenth Amendment Due

Process Clause, which in turn requires fair procedures with respect to the liberty interest.  <u>Swarthout v. Cooke</u>, 562 U.S. –, 131 S.Ct. 859, 861-62 (2011).

However, the procedures required for a parole determination are the minimal requirements set forth in <u>Greenholtz v. Inmates of Neb. Penal and Correctional Complex</u>, 442 U.S. 1, 12 (1979).[3] <u>Swarthout v. Cooke</u>, 131 S.Ct. 859, 862.  In <u>Swarthout</u>, the Court rejected inmates' claims that they were denied a liberty interest because there was an absence of "some evidence" to support the decision to deny parole.  The Court stated:

> There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners.  (Citation omitted.) When, however, a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication–and federal courts will review the application of those constitutionally required procedures. In the context of parole, we have held that the procedures required are minimal.  In <u>Greenholtz</u>, we found that a prisoner subject to a parole statute similar to California's received adequate process when he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied. (Citation omitted.)

<u>Swarthout</u>, 131 S.Ct. 859, 862.  The Court concluded that the

---

[3] In <u>Greenholtz</u>, the Court held that a formal hearing is not required with respect to a decision concerning granting or denying discretionary parole; it is sufficient to permit the inmate to have an opportunity to be heard and to be given a statement of reasons for the decision made. <u>Id.</u> at 16.  The decision maker is not required to state the evidence relied upon in coming to the decision. <u>Id.</u> at 15-16.  The Court reasoned that because there is no constitutional or inherent right of a convicted person to be released conditionally before expiration of a valid sentence, the liberty interest in discretionary parole is only conditional and thus differs from the liberty interest of a parolee. <u>Id.</u> at 9.  Further, the discretionary decision to release one on parole does not involve retrospective factual determinations, as in disciplinary proceedings in prison; instead, it is generally more discretionary and predictive, and thus procedures designed to elicit specific facts are unnecessary. <u>Id.</u> at 13.  In <u>Greenholtz</u>, the Court held that due process was satisfied where the inmate received a statement of reasons for the decision and had an effective opportunity to insure that the records being considered were his records, and to present any special considerations demonstrating why he was an appropriate candidate for parole. <u>Id.</u> at 15.

petitioners had received the process that was due as follows:

> They were allowed to speak at their parole hearings
> and to contest the evidence against them, were afforded
> access to their records in advance, and were notified
> as to the reasons why parole was denied....
>
> That should have been the beginning and the end of
> the federal habeas courts' inquiry into whether
> [the petitioners] received due process.

Swarthout, 131 S.Ct. at 862.  The Court in Swarthout expressly

noted that California's "some evidence" rule is not a substantive

federal requirement, and correct application of California's

"some evidence" standard is not required by the federal Due

Process Clause.  Id. at 862-63.

Here, in arguing that the decision of the BPH was not

supported by some evidence, Petitioner is asking this Court to

engage in the type of analysis prohibited by Swarthout.

Petitioner does not state facts that point to a real possibility

of constitutional error or that otherwise would entitle

Petitioner to habeas relief because California's "some evidence"

requirement is not a substantive federal requirement.  Review of

the record for "some evidence" to support the denial of parole is

not within the scope of this Court's habeas review under 28

U.S.C. § 2254.

Further, it is clear from the allegations in the petition

and the supporting documentation that Petitioner attended the

parole suitability hearing, made statements to the BPH, and

received a statement of reasons for the decision.  Thus,

Petitioner's own allegations establish that he had an opportunity

to be heard and received a statement of reasons for the decisions

in question.  It therefore does not appear that Petitioner could

state a tenable procedural due process claim.  Accordingly, to the extent that Petitioner's claim rests on procedural due process, it will be dismissed without leave to amend.

Accordingly, the petition will be dismissed without leave to amend insofar as Petitioner alleges that the suitability decision denied due process of law because of an absence of supporting evidence.

V.   <u>Equal Protection</u>

Petitioner argues that the suitability decision denied him the equal protection of the laws because it was not supported by any evidence of current dangerousness.

Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race, religion, or membership in a protected class subject to restrictions and limitations necessitated by legitimate penological interests.  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974); <u>Bell v. Wolfish</u>, 441 U.S. 520, 545-46 (1979).  The Equal Protection Clause essentially directs that all persons similarly situated should be treated alike.  <u>City of Cleburne, Texas v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985).  Violations of equal protection are shown when a respondent intentionally discriminates against a petitioner based on membership in a protected class, <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 686 (9th Cir. 2001), or when a respondent intentionally treats a member of an identifiable class differently from other similarly situated individuals without a rational basis, or a rational relationship to a legitimate state purpose, for the difference in treatment, <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564

(2000); <u>Engquist v. Oregon Department of Agriculture</u>, 553 U.S. 591, 601-02 (2008).

Here, Petitioner has not alleged that membership in a protected class was the basis of any alleged discrimination. Petitioner has not alleged that there was any invidiousness or any intentional treatment of Petitioner that was different from treatment of any similarly situated individuals, or that any such treatment lacked a rational basis, or a rational relationship to a legitimate state purpose, for the difference in treatment. Instead, Petitioner premises his claim upon the absence of evidence to support the suitability decision.

It may be that Petitioner is arguing that he was denied the equal protection of the laws because he had a short criminal record and, under the circumstances of his commitment offense and his history in prison, he presented no risk to society, and yet he was denied release even though he had served over thirty years for second degree murder. (Pet. at 34, 39, 46-47.) Petitioner may be attempting to argue that he has served a longer sentence than some prisoners who have been convicted of more serious offenses.

However, Petitioner has not alleged or shown that with respect to all pertinent factors of parole suitability, he is similarly situated with others who may have served less time after conviction of murder.

Legislation that discriminates based on characteristics other than race, alienage, national origin, and sex is presumed to be valid and must only be rationally related to a legitimate state interest in order to survive an equal protection challenge.

13

1   City of Cleburne, 473 U.S. at 440.  Prisoners who are eligible

2   for parole are not a suspect class entitled to heightened

3   scrutiny.  See, Mayner v. Callahan, 873 F.2d 1300, 1302 (9th Cir.

4   1989) (prisoners not a suspect class).  Furthermore, public

5   safety is a legitimate state interest.  See, Webber v. Crabtree,

6   158 F.3d 460, 461 (9th Cir. 1998) (health and safety are

7   legitimate state interests).  Under California law, a prisoner's

8   suitability for parole is dependent upon the effect of the

9   prisoner's release on the public safety.  Cal. Pen. Code

10  § 3041(b) (mandating release on parole unless the public safety

11  requires a more lengthy period of incarceration).  California's

12  parole system is thus both intended and applied to promote the

13  legitimate state interest of public safety.  See, Webber v.

14  Crabtree, 158 F.3d at 461.  Petitioner has not shown or even

15  suggested how the decision in the present case could have

16  constituted a violation of equal protection of the laws.

17       Further, the Court notes that parole consideration is

18  discretionary and does not provide the basis of a fundamental

19  right.  Mayner v. Callahan, 873 F.2d 1300, 1301-02 (9th Cir.

20  1989).

21       Finally, Petitioner argues that state constitutional

22  provisions create a right to equal protection of the laws and

23  uniform operation of the laws.  (Pet. 14, 21.)  To the extent

24  that Petitioner rests his equal protection claim on state

25  constitutional provisions or statutes, Petitioner cannot state

26  facts that would entitle him to relief.  Federal habeas relief is

27  not available to retry a state issue that does not rise to the

28  level of a federal constitutional violation.  Wilson v. Corcoran,

562 U.S. at 16; Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Thus, alleged errors in the application of state law are not

cognizable in federal habeas corpus.  Souch v. Schaivo, 289 F.3d

616, 623 (9th Cir. 2002).  In a habeas proceeding, this Court is

bound by the California Supreme Court's interpretation of

California law unless it is determined that the interpretation is

untenable or a veiled attempt to avoid review of federal

questions.  Murtishaw v. Woodford, 255 F.3d 926, 964 (9th Cir.

2001).  Here, there are no facts suggesting that any

interpretation of California law by California courts is

untenable or an attempt to avoid review of federal questions.

The Court concludes that Petitioner has not alleged specific

facts showing an equal protection violation.

With respect to the propriety of amending the petition to

state such a claim, the Court's statement in Greenholtz

concerning the difference between discretionary decisions

concerning parole release and those resulting in revocation of

parole is instructive:

> A second important difference between discretionary
> parole release from confinement and termination of
> parole lies in the nature of the decision that must be
> made in each case. As we recognized in Morrissey, the
> parole-revocation determination actually requires two
> decisions: whether the parolee in fact acted in
> violation of one or more conditions of parole and
> whether the parolee should be recommitted either for
> his or society's benefit. Id., at 479-480, 92 S.Ct. at
> 2599. "The first step in a revocation decision thus
> involves a wholly retrospective factual question." Id.,
> at 479, 92 S.Ct. at 2599.
>
> The parole-release decision, however, is more subtle
> and depends on an amalgam of elements, some of which
> are factual but many of which are purely subjective
> appraisals by the Board members based upon their
> experience with the difficult and sensitive task of
> evaluating the advisability of parole release. Unlike

1   the revocation decision, there is no set of facts
    which, if shown, mandate a decision favorable to the
2   individual. The parole determination, like a
    prisoner-transfer decision, may be made "for
3   a variety of reasons and often involve[s] no more
    than informed predictions as to what would best
4   serve [correctional purposes] or the safety and
    welfare of the inmate." <u>Meachum v. Fano</u>, 427 U.S.,
5   at 225, 96 S.Ct., at 2538.  The decision turns on
    a "discretionary assessment of a multiplicity of
6   imponderables, entailing primarily what a man is
    and what he may become rather than simply what
7   he has done." Kadish, The Advocate and the
    Expert-Counsel in the Peno-Correctional Process,
8   45 Minn.L.Rev. 803, 813 (1961).

9 <u>Greenholtz v. Inmates of Nebrasks Penal and Correctional Complex</u>,

10 442 U.S. 1, 9-10 (1979).  Because parole release determinations

11 are discretionary and are not subject to evaluation based on any

12 particular combination of factors of parole suitability, the fact

13 that Petitioner might posit some similarity with other inmates

14 with respect to offenses, history, or other parole suitability

15 factors would not be sufficient to entitle Petitioner to relief

16 based on the Equal Protection Clause.

17      In summary, Petitioner has failed to state in the petition

18 specific facts that point to a real possibility of constitutional

19 error based on the Equal Protection Clause of the Fourteenth

20 Amendment.  It does not appear that Petitioner could state a

21 tenable equal protection claim if leave to amend were granted.

22      Further, to the extent that Petitioner bases on state law

23 his claim or sub-claim concerning uniform or equal operation of

24 the laws, Petitioner has not alleged facts entitling him to

25 relief in a proceeding pursuant to 28 U.S.C. § 2254.

26      Accordingly, Petitioner's equal protection claim will be

27 dismissed without leave to amend.

28 ///

1     VI.   <u>Denial of a Fair Hearing</u>

2        Petitioner argues that he was denied a fair and impartial

3   hearing because the BPH failed to recognize its statutory

4   limitations and was not impartial.

5        Petitioner argues generally that the BPH failed to recognize

6   its statutory limitations.  This aspect of his claim is unclear

7   and indefinite, but it appears that Petitioner is arguing that

8   the BPH proceeded in violation of state law.  Again, Petitioner

9   fails to state specific facts that point to a real possibility of

10  constitutional error in this instance because a violation of

11  state law is not a basis for relief in a proceeding pursuant to

12  28 U.S.C. § 2254.  Further, Petitioner could not state a tenable

13  due process claim based on a violation of state law if leave to

14  amend were granted.

15       A fair trial in a fair tribunal is a basic requirement of

16  due process.  <u>In re Murchison</u>, 349 U.S. 133, 136 (1955).

17  California inmates have a due process right to parole

18  consideration by neutral, unbiased decision makers.  <u>O'Bremski v.</u>

19  <u>Maass</u>, 915 F.2d 418, 422 (9th Cir. 1990).  Because parole board

20  officials perform tasks that are functionally comparable to those

21  performed by the judiciary, they owe the same duty owed by the

22  judiciary to render impartial decisions in cases and

23  controversies that excite strong feeling because the litigant's

24  liberty is at stake.  <u>Id.</u>

25       Fairness requires an absence of actual bias and of the

26  probability of unfairness.  <u>Id.</u> at 136.  Bias may be actual, or

27  it may consist of the appearance of partiality in the absence of

28  actual bias.  <u>Stivers v. Pierce</u>, 71 F.3d 732, 741 (9th Cir.

1995).  A showing that the adjudicator has prejudged, or

reasonably appears to have prejudged, an issue, is sufficient.

Kenneally v. Lungren, 967 F.2d 329, 333 (9th Cir. 1992).

However, there is a presumption of honesty and integrity on the

part of decision makers.  Withrow v. Larkin, 421 U.S. 35, 46-47

(1975).

If an adjudicator has a pecuniary interest in the outcome of

a decision and has been the target of personal abuse or criticism

from the party before him, then the probability of actual bias is

high.  Withrow v. Larkin, 421 U.S. at 47.  A slight pecuniary

interest in a proceeding is generally not alone to violate due

process.  Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 825-26

(1986).  Generally, a combination of investigative and

adjudicative functions in an adjudicator does not alone

constitute a due process violation; however, where the

presumption of honesty and integrity in the adjudicators is

overcome by evidence of a risk of actual bias or prejudgment

based on special facts and circumstances, then a claim is made

out.  Withrow v. Larkin, 421 U.S. at 58.

The mere fact that a board denies relief in a given case or

has denied relief in the vast majority of cases does not

demonstrate bias.  Stivers v. Pierce, 71 F.3d at 742.  This is

because unfavorable judicial rulings alone are generally

insufficient to demonstrate bias unless they reflect such extreme

favoritism or antagonism that the exercise of fair judgment is

precluded.  Liteky v. United States, 510 U.S. 540, 555 (1994).

Here, Petitioner alleges that he had an unspecified case

against the BPH, and thus the BPH should have suspended its

18

jurisdiction in his case.  Petitioner refers to a case that was pending at the time of the parole hearing challenged in this proceeding and that was transferred from the Central District to the Eastern District of California.  (Pet. 91-95.)  Petitioner pointed out the case to the commissioners and gave them a copy of documents.  (Id.)  Reference to the dockets of this Court and elimination of cases not pending at the pertinent time shows that Petitioner was referring to <u>Lawrence Remsen v. Attorney General of the State of California</u>, case number CIV S-08-0447 FCD EFB P.[4] The Court further notes that this case involved Petitioner's challenge to his sentence, an argument that he was entitled to release as a matter of law, and a secondary contention that the state parole board thus lacked authority to determine if he was suitable for parole.  (Doc. 15, filed January 30, 2009, at pp. 1-5.)  It does not appear that the case involved a challenge to the particular parole proceeding held in 2008, which was the subject of the BPH's decision being challenged in the instant case. Instead, Petitioner was challenging his sentence, which was imposed by a court.  The BPH was not a party to the case, and its processes and determinations were not the subject of the litigation.

It thus does not appear that the commissioners had a direct, personal, substantial, or pecuniary interest in the case.  <u>Cf.</u>, <u>Aetna Life Ins. Co. v. Lavoie</u>, 475 U.S. at 820-25.  The pendency of a federal court case challenging Petitioner's sentence was not

---

[4] The Court may take judicial notice of court records.  Fed. R. Evid. 201(b); <u>United States v. Bernal-Obeso</u>, 989 F.2d 331, 333 (9th Cir. 1993); <u>Valerio v. Boise Cascade Corp.</u>, 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), <u>aff'd</u>, 645 F.2d 699 (9th Cir. 1981).

sufficient to entitle Petitioner to relief on the basis of due process of law.

Further, Petitioner alleges that politically appointed board members are not shown to be impartial.  (Pet. 5, 18, 34.) However, in this respect, Petitioner has not alleged facts that would entitle him to relief.  The transcript of the parole proceedings show that the commissioners considered pertinent factors of parole suitability and rendered a decision based on those factors.  Petitioner agreed that his rights had been met, and he expressly accepted the commissioners who were present to decide his case.  Petitioner has not overcome the presumption of impartiality.

It appears that the complete record of the parole suitability proceedings is before the Court.  It does not appear that Petitioner could allege a tenable claim of a biased tribunal if leave to amend were granted.

Accordingly, Petitioner's claim of a biased tribunal will be dismissed without leave to amend.

VII.  <u>Conflict with Representations concerning Petitioner's Sentence or a Plea Agreement</u>

Petitioner alleges that his rights to due process and equal protection were violated by the denial of parole because he was told at the time of his sentencing that if he conformed to the rules and regulations of the California Department of Corrections and Rehabilitation (CDCR), he would not serve more than fifteen years, but rather less than fifteen years based on his earned credits.  (Pet. 5, 8, 17-18.)

A record of classification committee proceedings reflects

that Petitioner was received in the CDCR on June 3, 1983, to

serve a term of twenty years to life pursuant to a conviction of

second degree murder in Los Angeles County.  (Pet. 71.)

Petitioner relies on a portion of a transcript of what appears to

have been a sentencing proceeding held on May 23, 1983, in which

an unidentified speaker opined that "15 to life" would be

appropriate because the community would be protected due to the

fact that Petitioner would be out of society's reach for several

to fifteen years, "whatever the case may be."  (Pet. 74.)  The

speaker continued to argue that such a sentence would be more

than enough by stating the following:

> When I say 10 or 15, I mean seven to ten incarcerated,
> actual incarceration, before he would be eligible
> for parole.

> That doesn't mean he's going to get out, even
> though those are the dates.  If he's not rehabilitated,
> I'm sure they can revoke it, or if they'd rather
> keep him in for an addition of time up to the 15 years,
> they can.

(Id.)  From additional statements that followed these remarks, it

appears likely that the speaker was Petitioner's counsel.  (Id.)

Further, Petitioner characterizes the statement as what

Petitioner was told by his counsel.  (Pet. 47.)

A criminal defendant has a due process right to enforce the

terms of a plea agreement.  Promises from the prosecution in a

plea agreement must be fulfilled if they are significant

inducements to enter into a plea.  Santobello v. New York, 404

U.S. 257, 262 (1971); Buckley v. Terhune, 441 F.3d 688, 694 (9th

Cir. 2006).  Plea agreements are contractual in nature and are

measured by contract law standards.  United States v. De la

Fuente, 8 F.3d 1333, 1337 (9th Cir. 1993).

Here, Petitioner fails to demonstrate that he is entitled to habeas relief on the basis of a contract. Petitioner alleges that he entered a pleas of not guilty, had a trial before the court, and testified at trial. (Pet. 1.) Thus, Petitioner admits that he did not enter into a plea agreement.

Further, Petitioner alleges that he was sentenced to "15 years to life plus 5 years." (Id.) The portion of the transcribed proceedings furnished by Petitioner, which is incomplete, establishes at most that Petitioner's counsel mentioned a sentence involving at least fifteen years of actual custody; it does not support a conclusion that Petitioner was promised or sentenced to release after fifteen, twenty, or any specific number of years. Thus, Petitioner has not alleged specific facts that support a conclusion that he entered into a plea agreement or received a sentence that included any term or condition concerning the parole period, Petitioner's eligibility for parole, or release on parole.

Petitioner's conclusional allegations are not supported by a statement of specific facts and thus do not warrant habeas relief. See, James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994). Petitioner fails to show that state authorities' finding that Petitioner was not suitable for parole was inconsistent with, or violated, any sentence or agreement. Further, Petitioner fails to show that his continued incarceration is inconsistent with his sentence. Thus, Petitioner's due process claim must be dismissed because Petitioner fails to allege facts entitling him to relief in this proceeding.

Because it has been established that Petitioner was

sentenced to fifteen years to life plus five years, it does not appear that if leave to amend were granted, Petitioner could state a tenable due process claim based on his counsel's statements or arguments made at sentencing.

Accordingly, Petitioner's due process claim based on representations made at sentencing will be dismissed without leave to amend.

Likewise, in connection with this claim, Petitioner fails to allege or show that membership in a protected class was the basis of any allegedly discriminatory treatment.  Petitioner has not alleged that there was any invidiousness or any intentional treatment of Petitioner that was different from treatment of any similarly situated individuals, or that any such treatment lacked a rational basis, or a rational relationship to a legitimate state purpose, for the difference in treatment.  Thus, to the extent that Petitioner is attempting to allege a violation of equal protection in connection with counsel's statement at sentencing, Petitioner's claim must be dismissed.  Although it appears that Petitioner has access to the transcripts of his proceedings in the trial court, Petitioner has not set forth any allegations or provided any documentation that would support a claim for relief based on the equal protection clause.

Therefore, Petitioner's claim of a violation of equal protection based on representations made at sentencing will be dismissed without leave to amend.

VIII.   Excess of Authority

Petitioner argues that his rights to due process and equal protection of the laws were violated by the BPH's determination

1   of the length of Petitioner's sentence because it exceeded the

2   BPH's authority, is a legislative function, and results in an

3   absence of uniformity of sentence and a violation of Petitioner's

4   right under state law to have his sentence set on the basis of

5   proportionality of the offense and on earned credits.  (Pet. 19-

6   21, 38-39.)  Petitioner also argues that it violated the state

7   constitution for the legislature to delegate to a ministerial

8   agency its penalty-fixing powers, and to vest this power in the

9   executive branch, which also had the authority to prosecute

10  crimes.  (Id. at 20.)

11      It appears that in alleging these claims, Petitioner is

12  relying on state law.  A claim based on state law is insufficient

13  to warrant relief pursuant to 28 U.S.C. § 2254.

14      The defect in this claim or set of sub-claims is based on

15  the nature of the claims, and not any failure to set forth

16  adequate factual allegations.

17      Accordingly, this claim will be dismissed without leave to

18  amend.

19      IX.  Equal Protection

20      Petitioner complains that as a person sentenced under the

21  Determinate Sentencing Law (DSL), he is denied the right to know

22  with certainty the extent of his term, which all other offenders

23  sentenced under the DSL would know if they were not sentenced to

24  life in prison.  (Id. at 21.)

25      To the extent that Petitioner is attempting to set forth a

26  federal equal protection claim, he has not shown that he is

27  similarly situated with prisoners who have not been sentenced to

28  prison for life.  Thus, Petitioner does not, and could not, state

24

a tenable equal protection claim on this basis.

To the extent that Petitioner bases his equal protection claim on state law, Petitioner fails to state a claim cognizable in a proceeding pursuant to 28 U.S.C. § 2254.

Accordingly, Petitioner's claim will be dismissed without leave to amend.

X.   Incorrect Interpretation or Application of State Law concerning Annual Parole Hearings

Petitioner argues that the failure to provide annual parole hearings, which was the practice when Petitioner was convicted, is an incorrect interpretation or application of state law. (Pet. 22.)   Petitioner also argues that Cal. Pen. Code §§ 3041, 3041.5, and 3042 are incorrectly applied to him because they were meant to be applied to persons sentenced to be imprisoned for life with the possibility of parole.   (Id. at 21, 23.)

Again, an allegation that state law was incorrectly interpreted or applied does not entitle a petitioner to relief in a proceeding pursuant to 28 U.S.C. § 2254.

Petitioner also generally asserts that the failure to have annual parole hearings denies him substantive due process and equal protection of the laws.   (Id. at 23.)   As previously noted, a right to release on parole is not a component of substantive due process.   Further, Petitioner has alleged no facts that would support an inference that the presumably valid legislation ran afoul of the Equal Protection Clause.   Thus, to the extent that Petitioner is attempting to state a due process or equal protection claim concerning his failure to receive annual parole hearings, his claim or claims must be dismissed without leave to

amend.

Accordingly, this claim will be dismissed without leave to amend.

X.   Ex Post Facto Claims

Petitioner alleges that various changes in parole procedures that post-dated his conviction violated the prohibitions against ex post facto laws in the federal and state constitutions.  (Pet. 22-25.)  Documentation attached to the petition reflects that Petitioner committed the commitment offense of murder on June 29, 1981.  (Id. at 69.)

To the extent that Petitioner relies on California's constitution, Petitioner fails to state a claim for relief pursuant to § 2254 because his claim is predicated on state law.

It appears that Petitioner challenges various changes in state parole statutes as violations of the prohibition against ex post facto laws.  Although Petitioner notes that he would have had various rights under the laws in effect at the time of his offense in June 1981, he continues to claim that he was denied 1) a jury trial on the issue of dangerousness; 2) his right to have his parole date fixed "uniform to the crime based on his already earned good-time and participation credits," and 3) annual parole hearings.  (Pet. 24.)

Petitioner's parole hearing occurred on March 19, 2008. Thus, it appears that the parole suitability determination challenged by Petitioner occurred pursuant to Cal. Pen. Code § 3041.5 as last amended in 1994.  1994 Cal. Stat. ch. 560, § 1. Under that provision, the parole authority could deny parole for up to five years if it found that it was not reasonable to expect

26

that parole would be granted at a hearing during the following years and stated the basis for the finding in writing.

The Constitution provides, "No State shall... pass any... ex post facto Law." U.S. Const. art I, § 10.  The Ex Post Facto Clause prohibits any law which: 1) makes an act done before the passing of the law, which was innocent when done, criminal; 2) aggravates a crime and makes it greater than it was when it was committed; 3) changes the punishment and inflicts a greater punishment for the crime than when it was committed; or 4) alters the legal rules of evidence and requires less or different testimony to convict the defendant than was required at the time the crime was committed.  Carmell v. Texas, 529 U.S. 513, 522 (2000).  Application of a state regulation retroactively to a defendant violates the Ex Post Facto Clause if the new regulations create a "sufficient risk" of increasing the punishment for the defendant's crimes.  Himes v. Thompson, 336 F.3d 848, 854 (9th Cir. 2003) (citing Cal. Department of Corrections v. Morales, 514 U.S. 499, 509 (1995)).  When the rule or statute does not by its own terms show a significant risk, the prisoner must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule.  Garner v. Jones, 529 U.S. 244, 250, 255 (2000).

Previous amendments to Cal. Pen. Code § 3041.5, which initiated longer periods of time between parole suitability hearings, have been upheld against challenges that they violated the Ex Post Facto Clause.  See, e.g., California Department of

27

1  <u>Corrections v. Morales</u>, 514 U.S. 499, 505, 509 (1995) (1981

2  amendment that permitted deferral of subsequent suitability

3  hearings for up to three years instead of holding annual

4  hearings); <u>Watson v. Estelle</u>, 886 F.2d 1093, 1097-98 (9th Cir.

5  1989) (1981 amendment).  Similarly, it has been held that a state

6  law permitting the extension of intervals between parole

7  consideration hearings for all prisoners serving life sentences

8  from three to eight years did not violate the Ex Post Facto

9  Clause where expedited parole review was available upon a change

10 of circumstances or receipt of new information warranting an

11 earlier review, and where there was no showing of increased

12 punishment.  Under such circumstances, there was no significant

13 risk of extending a prisoner's incarceration.  <u>Garner v. Jones</u>,

14 529 U.S. at 249.

15      Consistent with the foregoing authorities, it has been held

16 that the version of § 3041.5 at issue in the instant case did not

17 violate the ex post facto prohibition by increasing the time

18 between suitability hearings in excess of two years.  <u>Torricellas</u>

19 <u>v. Davison</u>, 519 F.Supp.2d 1040, 1049-50 (C.D.Cal. 2007).  The

20 court reasoned that the measure of punishment attached to the

21 commitment offense of murder was not increased because the

22 standards for determining eligibility or suitability were not

23 altered; rather, only the method or timing to be followed in

24 fixing a release date was changed.  Further, the parole authority

25 retained the authority to tailor the frequency of subsequent

26 suitability hearings to the particular circumstances of the

27 individual prisoner.  <u>Id.</u>

28      Accordingly, Petitioner is not entitled to relief on his

claim concerning lengthier intervals between parole hearings.

With respect to Petitioner's claim that he was deprived of his right to have his parole date fixed "uniform to the crime based on his already earned good-time and participation credits" (pet. 24), Petitioner has not alleged facts warranting an inference that the statute's retroactive application will affect the measure of punishment or result in a longer period of incarceration than under the earlier rule.  See, Garner v. Jones, 529 U.S. at 250, 255.  Therefore, Petitioner's ex post facto claim must be dismissed.

However, because it is possible that Petitioner could allege facts to support a tenable ex post facto claim, Petitioner will be granted leave to amend his petition to state further facts in this regard.

It is not clear, but it is possible that Petitioner is claiming that consideration of his parole suitability by fewer commissioners than would have considered it under the law in effect at the time he committed his offense violates the ex post facto provision.  (Pet. 26-29.)

However, in this regard, Petitioner has not set forth facts warranting a conclusion that application of the new law created a significant risk of increasing the measure of punishment attached to Petitioner's crimes.  See, Garner v. Jones, 529 U.S. at 256; Thomas v. Yates, 637 F.Supp.2d 837, 846-47 (E.D.Cal. 2009) (noting that under Garner, ex post facto challenges to a facially neutral parole statue require an as-applied analysis); Johnson v. Gomez, 92 F.3d 964, 967-68 (9th Cir. 1996) (holding that amendment of § 3041.2 in 1988 to permit the governor to reverse

or modify a decision of the BPH that a prisoner was suitable for parole did not violate the ex post facto clause because the petitioner could only speculate that the BPH would have granted parole had it possessed the final review authority).

Nevertheless, it is possible that Petitioner could allege a tenable ex post facto claim if leave to amend were granted.

Accordingly, Petitioner's ex post facto claim or claims will be dismissed with leave to amend.

XI.   <u>Application of Cal. Pen. Code § 3041 to Petitioner</u>

Petitioner argues that application of Cal. Pen. Code § 3041 to Petitioner deprives him of the right to substantive due process and equal protection of the laws because Petitioner is not serving a life sentence.  (Pet. 23-24, 36.)

Cal. Pen. Code § 3041 provides for parole release for "any inmate sentenced pursuant to any provision of law, other than Chapter 4.5 (commencing with Section 1170) ...."  Cal. Pen. Code § 3041(a).  Cal. Pen. Code § 1170 provides for determinate sentencing, whereby the penalty for a criminal offense is generally fixed by statute in proportion to the seriousness of the offense as determined by the Legislature, with specific sentences to be imposed by a court within specified discretion conferred upon the court.  § 1170(a).

Petitioner admits that he is serving a sentence of fifteen years to life plus five years.  (Pet. 1.)  Thus, Petitioner's sentence is indeterminate.  As previously noted, it is established by California law that an indeterminate sentence is in legal effect a sentence for the maximum term of life.  <u>People v. Dyer</u>, 269 Cal.App.2d at 214.  Further, a convicted person

serving an indeterminate life term in state prison is generally
not entitled to release on parole until he is found suitable for
such release by the Board of Parole Hearings (previously, the
Board of Prison Terms).  Cal. Pen. Code § 3041(b).  Under
California's Determinate Sentencing Law, an inmate such as
Petitioner who serving an indeterminate sentence for murder may
serve up to life in prison, but he does not become eligible for
parole consideration until the minimum term of confinement is
served.  In re Dannenberg, 34 Cal.4th 1061, 1078 (2005).  As was
the practice under California's previous indeterminate sentencing
law, the actual confinement period of a life prisoner is
determined by an executive parole agency.  Id.

Pursuant to state law, Petitioner is serving a life
sentence.  Thus, Cal. Pen. Code § 3041 applies to Petitioner as a
matter of state law.  To the extent that Petitioner bases his
claim on an improper interpretation or application of state law,
Petitioner's claim is not cognizable in this proceeding.

Petitioner has alleged no facts supporting an inference that
application of the statute to Petitioner violates his rights to
due process of law or equal protection.  Further, it does not
appear that Petitioner could state a tenable due process claim
based on the mere application of a facially valid state law to
him.

Further, with respect to the interpretation or application
of the state statute, Petitioner has alleged no purposeful
discrimination based on membership in a protected class.  It does
not appear that Petitioner could allege a tenable equal
protection claim if leave to amend were granted.

31

1   Accordingly, Petitioner's claim or claims concerning the

2   application of Cal. Pen. Code § 3041 will be dismissed without

3   leave to amend.

4       XII.   Excess of Authority

5       In a similar vein, Petitioner argues that the BPH's changes

6   in rules and regulations governing parole exceeded their

7   authority and thus denied him due process and equal protection.

8   (Pet. 26-28.)   An excess of authority under state law does not

9   amount to a constitutional violation.   Petitioner has not alleged

10  facts that point to a real possibility of constitutional error in

11  this regard.

12      Therefore, Petitioner's claim will be dismissed without

13  leave to amend.

14      XIII.   Cal. Penal Code § 2931

15      Petitioner argues that his right of contract and right to a

16  reduction of his sentence were violated pursuant to a contractual

17  agreement between Petitioner and the state.   Although Petitioner

18  refers to a contractual right, Petitioner premises his claim on

19  Cal. Pen. Code § 2931 and additional statutes in effect at the

20  time he committed his crime, on the earning of unspecified time

21  credits, and on the fact that he has served approximately thirty

22  (30) years on a sentence of fifteen years to life plus five years

23  while performing his prison work with highest ratings and

24  remaining free of disciplinary violations.   (Pet. 41-46.)

25  Petitioner argues that he had a vested right to be informed

26  within thirty days of reception in prison of the total amount of

27  good behavior and participation credits to be credited to his

28  term and of his anticipated good-time release date.

It appears that Petitioner is simply arguing that state law was improperly interpreted or applied to him.  To the extent that Petitioner argues that the parole authority violated state law, Petitioner has failed to state facts entitling him to release in a proceeding pursuant to 28 U.S.C. § 2254.

Petitioner further argues that the failure to perform statutory duties constitutes a violation of his rights to substantive due process of law and equal protection of the laws.

Again, to the extent that Petitioner is relying on the state constitution, Petitioner fails to state a claim entitling him to relief.

To the extent that Petitioner is relying on the Fourteenth Amendment as a basis for a substantive due process claim, Petitioner has not alleged or shown that he has been deprived of a federally protected, fundamental right.

If Petitioner is actually asserting a procedural due process claim, the Court reiterates that a 'mere error of state law' is not a denial of due process." Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991).

With respect to an equal protection claim, Petitioner has not alleged facts warranting a conclusion that he was intentionally treated differently from others similarly situated or that he was intentionally discriminated based on his membership in a protected class.  Further, he has not alleged any facts warranting an conclusion that any such discriminatory treatment lacked a rational basis for the difference in treatment.

Petitioner has alleged no facts suggesting that a tenable

33

1   equal protection claim could be stated if leave to amend were

2   granted.

3       Accordingly, Petitioner's due process and equal protection

4   claims will be dismissed without leave to amend.

5       XIV.  <u>First Amendment</u>

6       Petitioner alleges that he suffered a violation of his First

7   Amendment right to petition the government because the state

8   courts never granted Petitioner a hearing on the merits of his

9   claims.  (Pet. 6.)

10      Petitioner's claim relates not to the legality or duration

11  of his confinement, but rather to the conditions of his

12  confinement.

13      A habeas corpus petition is the correct method for a

14  prisoner to challenge the legality or duration of his

15  confinement.  <u>Badea v. Cox</u>, 931 F.2d 573, 574 (9th Cir. 1991)

16  (quoting <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 485 (1973));

17  Advisory Committee Notes to habeas Rule 1, 1976 Adoption.

18      In contrast, a civil rights action pursuant to 42 U.S.C.

19  § 1983 is the proper method for a prisoner to challenge the

20  conditions of that confinement.  <u>McCarthy v. Bronson</u>, 500 U.S.

21  136, 141-42 (1991); <u>Preiser</u>, 411 U.S. at 499; <u>Badea</u>, 931 F.2d at

22  574; Advisory Committee Notes to Habeas Rule 1, 1976 Adoption.

23      With respect to this claim, Petitioner is not challenging a

24  conviction or sentence; rather, he is challenging the conditions

25  of his confinement.  Thus, Petitioner is not entitled to habeas

26  corpus relief on this claim, and the claim will be dismissed.

27  Should Petitioner wish to pursue his claims, he must do so by way

28  of a civil rights complaint pursuant to 42 U.S.C. § 1983.   The

1  Clerk will be directed to send an appropriate form complaint to
2  Petitioner.

3      XV.   Right to Jury Trial

4      The legal basis for Petitioner's assertion that he was
5  denied a right to a jury trial with respect to his suitability
6  for parole is unclear.  Although Petitioner mentioned it in
7  connection with an ex post facto claim (pet. 24), the Court is
8  unaware of any authority for such a right to a jury trial that
9  predated Petitioner's offense.

10     It is possible that Petitioner is arguing that he is
11 entitled to a jury trial pursuant to Apprendi v. New Jersey, 530
12 U.S. 466 (2000).  In Apprendi, the Court held that any fact other
13 than a prior conviction that is necessary to support a sentence
14 exceeding the maximum authorized by the facts established by a
15 plea of guilty or a jury verdict must be admitted by a defendant
16 or proved to a jury beyond a reasonable doubt.  Apprendi v. New
17 Jersey, 530 U.S. 466, 490; United States v. Booker, 543 U.S. 220,
18 244 (2005).  In Blakely v. Washington, 542 U.S. 296, 303 (2004),
19 the Court held that the "statutory maximum for Apprendi purposes
20 is the maximum sentence a judge may impose solely on the basis of
21 the facts reflected in the jury verdict or admitted by the
22 defendant."  Blakely, 542 U.S. at 303.  In California, an
23 indeterminate sentence of fifteen years to life is in legal
24 effect a sentence for the maximum term of life, subject only to
25 the power of the parole authority to set a lesser term.  People
26 v. Dyer, 269 Cal.App.2d 209, 214 (1969).

27     Here, in denying parole, the BPH did not increase
28 Petitioner's sentence beyond the statutory maximum of life

1  imprisonment for second degree murder.  <u>See</u>, Cal. Pen. Code

2  § 190(a).  Accordingly, Petitioner has not stated facts

3  concerning an <u>Apprendi</u> claim that would entitle him to relief.

4       Further, the Court is mindful of the discretionary and

5  predictive evaluations made by the BPH in considering release of

6  an inmate on parole.  <u>See</u>, <u>Greenholtz v. Inmates of Nebraska</u>

7  <u>Penal and Corr. Complex</u>, 442 U.S. 1, 9-10 (1979).  The Court is

8  not aware of any Supreme Court authority applying the principles

9  of <u>Apprendi</u> to parole proceedings.  The Court notes that

10 Petitioner was not entitled to a jury trial or proof beyond a

11 reasonable doubt in his parole proceedings.  <u>See</u>, <u>United States</u>

12 <u>v. Knights</u>, 534 U.S. 112, 120 (2001) (no right to jury trial or

13 proof beyond a reasonable doubt in proceedings to revoke

14 probation, which involve the weightier liberty interest of one

15 already at liberty); <u>United States v. Huerta-Pimentel</u>, 445 F.3d

16 1220, 1225 (9th Cir. 2006) (a judge's finding by a preponderance

17 of the evidence that a defendant violated the conditions of

18 supervised release does not raise a concern regarding the Sixth

19 Amendment); <u>see</u>, <u>Swarthout v. Cooke</u>, 131 S.Ct. at 862.  Instead,

20 Petitioner was entitled to the relatively minimal processes of

21 <u>Greenholtz</u>.  Thus, it would not appear that <u>Apprendi</u>, which

22 concerns a right to jury trial and proof beyond a reasonable

23 doubt to a jury, would be applicable to parole proceedings.

24      The Court concludes that Petitioner did not allege facts

25 showing that the absence of a jury trial denied his right to due

26 process of law or the prohibition against ex post facto laws.

27 Further, it does not appear that Petitioner could state tenable

28 due process or ex post facto claims if leave to amend were

1  granted.

2       Accordingly, Petitioner's claim concerning a right to a jury
3  trial will be dismissed without leave to amend.

4       XVI.   <u>Amendment of the Petition</u>

5       The instant petition must be dismissed for the reasons
6  stated above.  Petitioner will be given an opportunity to file a
7  first amended petition to cure the deficiencies.  Petitioner is
8  advised that failure to file a petition in compliance with this
9  order (i.e., a completed petition with cognizable federal claims
10 clearly stated and with exhaustion of state remedies clearly
11 stated) within the allotted time will result in a recommendation
12 that the petition be dismissed and the action be terminated.
13 Petitioner is advised that the amended petition should be
14 entitled, "First Amended Petition," and it must refer to the case
15 number in this action.  Further, Petitioner is informed that
16 Local Rule 220 provides that unless prior approval to the
17 contrary is obtained from the Court, every pleading as to which
18 an amendment or supplement is permitted shall be retyped or
19 rewritten and filed so that it is complete in itself without
20 reference to the prior or superseded pleading.

21      XVII.  <u>Disposition</u>

22      In accordance with the foregoing analysis, it is ORDERED
23 that:

24      1)  The order to show cause that issued on May 24, 2012, is
25 DISCHARGED; and

26      2)  Except for Petitioner's ex post facto claim or claims,
27 the petition for writ of habeas corpus is DISMISSED without leave
28 to amend; and

1  　　　3) With respect to Petitioner's ex post facto claim or

2  claims, Petitioner is GRANTED thirty (30) days from the date of

3  service of this order to file an amended petition in compliance

4  with this order; and

5  　　　4) The Clerk of the Court is DIRECTED to send Petitioner a

6  form petition pursuant to 28 U.S.C. § 2254.

7  　　IT IS SO ORDERED.

8  **Dated:**   **August 7, 2012**        **/s/ Barbara A. McAuliffe**
　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28