# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

LAWRENCE REMSEN,

      Petitioner,

   v.

KAMALA HARRIS, et al.,

      Respondents.

Case No. 1:12-cv-00731-BAM-HC

ORDER DISMISSING THE FIRST AMENDED PETITION WITHOUT LEAVE TO AMEND (DOC. 30), DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DIRECTING THE CLERK TO CLOSE THE CASE

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. 636(c)(1), Petitioner has consented to the jurisdiction of the United States Magistrate Judge to conduct all further proceedings in the case, including the entry of final judgment, by manifesting his consent in a writing signed by Petitioner on May 15, 2012, and filed in this Court on May 17, 2012. Pending before the Court is the first amended petition (FAP), filed on May 10, 2013.

///

1

I.   Screening the Petition

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies to the petition.  Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997).

Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (Habeas Rules) requires the Court to make a preliminary review of each petition for writ of habeas corpus. The Court must summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court...."  Habeas Rule 4; O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990); see also Hendricks v. Vasquez, 908 F.2d 490 (9th Cir. 1990).  Habeas Rule 2(c) requires that a petition 1) specify all grounds of relief available to the Petitioner; 2) state the facts supporting each ground; and 3) state the relief requested.  Notice pleading is not sufficient; rather, the petition must state facts that point to a real possibility of constitutional error.  Rule 4, Advisory Committee Notes, 1976 Adoption; O'Bremski v. Maass, 915 F.2d at 420 (quoting Blackledge v. Allison, 431 U.S. 63, 75 n.7 (1977)).  Allegations in a petition that are vague, conclusory, or palpably incredible are subject to summary dismissal.  Hendricks v. Vasquez, 908 F.2d at 491.

Further, the Court may dismiss a petition for writ of habeas corpus either on its own motion under Habeas Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed.  Advisory Committee Notes to Habeas Rule 8, 1976

2

1  Adoption; see, <u>Herbst v. Cook</u>, 260 F.3d 1039, 1042-43 (9th Cir.

2  2001).

3      A petition for writ of habeas corpus should not be dismissed

4  without leave to amend unless it appears that no tenable claim for

5  relief can be pleaded were such leave granted.  <u>Jarvis v. Nelson</u>,

6  440 F.2d 13, 14 (9th Cir. 1971).

7      II.  <u>Background</u>

8      Petitioner's initial petition concerned a decision of

9  California's Board of Parole Hearings (BPH) made after a hearing

10  held on March 19, 2008, finding Petitioner unsuitable for parole.

11  Petitioner raised due process, equal protection, ex post facto, and

12  First Amendment claims concerning the decision, and he argued that

13  the parole denial was contrary to an agreement or to promises made

14  by the sentencing court and denied him his right to a jury trial.

15  The Court dismissed all of Petitioner's claims without leave to

16  amend except for his ex post facto claim, which was dismissed with

17  leave to amend.  After an appeal was terminated, the Court extended

18  the time for Petitioner to file a first amended petition.

19      On May 10, 2013, Petitioner filed a first amended petition that

20  is 131 pages long.  In the FAP, Petitioner alleges that he is

21  serving a sentence of fifteen years to life plus five years for

22  second degree murder and other crimes.  (FAP, doc. 30, 1.)  He

23  appended to the FAP a document that shows that at some time

24  Petitioner's release date was calculated as September 11, 1992, or

25  September 11, 1993.  (<u>Id.</u> at 62.)  He alleges the following claims

26  in the FAP: 1) the state parole agency arbitrarily and capriciously

27  applied ultra vires rules and regulations to Petitioner (<u>id.</u> at 4);

28  2) the state parole agency denied Petitioner's liberty interest in

3

being released on time pursuant to the laws in effect at the time of Petitioner's arrest (id. at 4); 3) the state parole agency's rules and regulations are being retroactively applied to defeat Petitioner's vested right to have Cal. Pen. Code § 2931 as the means to fix Petitioner's parole release date; 4) Cal. Pen. Code § 2931 is an implied contract requiring Petitioner's specific performance, which is being defeated by the parole agency's retroactive and ultra vires rules and regulations in violation of the prohibition against ex post facto laws; and 5) application of the parole agency's rules and regulations defeats the "Legislative declaration" in Cal. Pen. Code § 1170(a)(1) and denies him due process and equal protection of the laws.

III.   Arbitrary and Capricious Application of Ultra Vires State Rules and Regulations

Petitioner does not state the date on which he committed his commitment offense of murder, but he states that he was arrested on June 29, 1981. (FAP 26, 34.) Petitioner pled not guilty and was convicted in a court trial. (Id. at 1.)

Petitioner chronicles the repeal of California's indeterminate sentencing law in the late 1970's, which Petitioner alleges limited the discretion of the parole agency. (Id. at 27-31.) Petitioner argues that the various enactments and propositions revoked the parole agency's authority to fix terms with respect to crimes other than "for life" crimes, and that Petitioner's offense was "less than a SB-42 Category Five "FOR LIFE" crime." (Id. at 28.) Petitioner argues that this conflicts with legislative declarations and the

4

language of other California laws, and that the parole agency simply was not vested with the authority to decide when Petitioner would be at liberty.

Although Petitioner emphasizes the retroactive nature of the state rules and regulations being applied, Petitioner's claim is a state law claim based on the assertion that the state parole agency lacked authority under state law to determine Petitioner's parole release date.  However, federal habeas relief is available to state prisoners only to correct violations of the United States Constitution, federal laws, or treaties of the United States.  28 U.S.C. § 2254(a).  Federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation.  Wilson v. Corcoran, 562 U.S. — , 131 S.Ct. 13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Alleged errors in the application of state law are not cognizable in federal habeas corpus.  Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002) (an ex post facto claim challenging state court's discretionary decision concerning application of state sentencing law presented only state law issues and was not a cognizable claim in a proceeding pursuant to 28 U.S.C. § 2254); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996).  The Court accepts a state court's interpretation of state law.  Langford v. Day, 110 F.3d at 1389.  In a habeas corpus proceeding, this Court is bound by the California Supreme Court's interpretation of California law unless it is

5

determined that the interpretation is untenable or a veiled attempt to avoid review of federal questions.  <u>Murtishaw v. Woodford</u>, 255 F.3d 926, 964 (9th Cir. 2001).

Here, there is no indication that the California courts' interpretation of state law was untenable or a veiled attempt to avoid review of federal questions.  Accordingly, to the extent that Petitioner's claim challenges the state courts' application of state law, Petitioner's claim must be dismissed.

Further, because the defect in Petitioner's state law claim stems from the nature of the claim as a state law claim and not because of any dearth of factual allegations, it does not appear that Petitioner could state a tenable claim if leave to amend were granted.

Accordingly, Petitioner's claim or claims that the state parole agency was without authority to determine his parole date will be dismissed without leave to amend.

IV.   <u>Retroactive Application of Parole Rules and Regulations to Defeat Petitioner's Vested Right</u>

Petitioner repeats his argument, based on state law, that the provisions of Cal. Pen. Code § 2931 as effective at the time of his arrest limited the power of the parole agency to do anything more than set the conditions of parole once the parolee's release date was fixed according to Cal. Pen. Code § 2931.  (<u>Id.</u> at 32.)  As previously noted, Petitioner's state law claim must be dismissed without leave to amend.

Petitioner alleges that pursuant to the statutes in effect before his arrest, he had a constitutionally protected interest to be released on parole no later than September 11, 1992, and to be discharged off parole no later than September 11, 1993, unless he was found to have been a medically disordered offender in a trial by jury.  Petitioner argues that application of any laws passed after June 29, 1981, the date of Petitioner's arrest, violates the Ex Post Facto Clause as well as Petitioner's right to substantive due process and equal protection of the law.  (Id. at 32, 34.)

A.   Ex Post Facto Violation

The Constitution provides, "No State shall... pass any... ex post facto Law."  U.S. Const. art I, § 10.  The Ex Post Facto Clause prohibits any law which: 1) makes an act done before the passing of the law, which was innocent when done, criminal; 2) aggravates a crime and makes it greater than it was when it was committed; 3) changes the punishment and inflicts a greater punishment for the crime than when it was committed; or 4) alters the legal rules of evidence and requires less or different testimony to convict the defendant than was required at the time the crime was committed. Carmell v. Texas, 529 U.S. 513, 522 (2000).  Application of a state regulation retroactively to a defendant violates the Ex Post Facto Clause if the new regulations create a "sufficient risk" of increasing the punishment for the defendant's crimes.  Himes v. Thompson, 336 F.3d 848, 854 (9th Cir. 2003) (citing Cal. Department

7

of Corrections v. Morales, 514 U.S. 499, 509 (1995)).  When the rule

or statute does not by its own terms show a significant risk, the

claimant must demonstrate, by evidence drawn from the rule's

practical implementation by the agency charged with exercising

discretion, that its retroactive application will result in a longer

period of incarceration than under the earlier rule.  Garner v.

Jones, 529 U.S. 244, 250, 255 (2000).

Therefore, the mere fact that legislation or a regulation is

applied retroactively does not demonstrate a violation of the Ex

Post Facto Clause; rather, it must be demonstrated by evidence that

retroactive application will result in a longer period of

incarceration than under the earlier rule.  Thus, previous

amendments to California statutes that have changed the process for

determining parole suitability have been upheld against ex post

facto challenges.  See, e.g., California Department of Corrections

v. Morales, 514 U.S. 499, 509 (1995) (Cal. Pen. Code § 3041.5, which

extended the periods of time between parole suitability hearings,

was upheld against an ex post facto challenge); Watson v. Estelle,

886 F.2d 1093, 1097-98 (9th Cir. 1989).  Similarly, it has been held

that a state law permitting the extension of intervals between

parole consideration hearings for all prisoners serving life

sentences from three to eight years did not violate the Ex Post

Facto Clause where expedited parole review was available upon a

change of circumstances or receipt of new information warranting an

8

earlier review, and where there was no showing of increased

punishment.  Under such circumstances, there was no significant risk

of extending a prisoner's incarceration.  Garner v. Jones, 529 U.S.

at 249.

Petitioner argues that the state must show the authority by

which it proceeded to sentence Petitioner and must demonstrate that

any measure applied in the process of reviewing Petitioner's

suitability for parole was not more onerous than the measures in

effect at the time of Petitioner's arrest.  Petitioner alleges that

at the time of his arrest (and assumedly at the time of his crime),

which the Court understands to have been in 1981, the parole

authority had no power to fix terms or grant parole to a prisoner

who had committed second degree murder.

However, the Court notes that in 1980, a murderer's parole

suitability was determined pursuant to administrative guidelines

that permitted the parole authority to consider whether the offender

posed an unreasonable risk of danger to society by virtue of

pertinent suitability factors such as history of violent conduct,

misconduct in prison, and psychiatric diagnoses.  See, In re Duarte,

143 Cal.App.3d 943, 945-51 (3d Dist. 1983) (detailing the

Determinate Sentencing Law's standards for parole suitability of

first degree murderers and the determination of whether the offender

would present an unreasonable risk of danger to society based on all

relevant factors).  Amendments from 1981 did not change those

9

substantive standards.  See. In re Vicks, 56 Cal.4th 274, 288 (2013)
(recognizing that the 1981 amendment of California law that in some
circumstances reduced the periods between parole hearings functioned
only to alter the method to be followed in fixing a parole release
date, yet did so "under identical substantive standards").  Thus,
Petitioner's characterization of the state of the parole
determination standards operative at the time of his offense is not
borne out by the California case law.

Further, it is the burden of the Petitioner to demonstrate, by
evidence, the retroactive application of a particular rule or
regulation will result in a longer period of incarceration than
under the earlier rule.  Garner v. Jones, 529 U.S. at 250-255.
Here, Petitioner has not identified a rule or regulation that by its
own terms shows a significant risk of increasing the punishment for
the Petitioner's crime.  Petitioner repeatedly asserts that he has
been disadvantaged by unspecified changes in the law; however, he
alleges no facts to support his assertions.

In summary, Petitioner has not shown that any retroactive
application of any particular rule or regulation risks a longer
period of incarceration for Petitioner than was present under an
earlier rule.

The Court concludes that although Petitioner was granted leave
to file an amended petition with respect to his ex post facto claim,
Petitioner has not alleged facts showing an ex post facto violation.

It does not appear that if given leave to amend again, Petitioner could state a tenable ex post facto claim.

Accordingly, Petitioner's ex post facto claim will be dismissed without leave to amend.

### B.   Substantive Due Process

Petitioner alleges that he has been deprived of a vested right and thus suffered a violation of his right to substantive due process of law.   (FAP 35-36.)

Petitioner's substantive due process claim in his originally filed petition was dismissed without leave to amend.   Petitioner has been informed that the substantive component of due process protects against governmental interference with those rights "implicit in the concept of ordered liberty." Palko v. Connecticut, 302 U.S. 319, 324-25 (1937).   It forbids the government to infringe fundamental liberty interests, such as the right to liberty, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest. Reno v. Flores, 507 U.S. 292, 301-02 (1993).

Here, Petitioner has failed to allege facts warranting a conclusion that the BPH's decision infringed a federally protected, fundamental right.   Petitioner simply asserts that the action of the BPH, which was undertaken in accordance with procedures that satisfied the requirements of procedural due process of law, violated his right to substantive due process of law.   Petitioner's

11

assertions do not constitute facts that point to a real possibility of constitutional error.

In addition, even where state law creates a liberty interest in parole, there is no federal right to be conditionally released before the expiration of a valid sentence. Roberts v. Hartley, 640 F.3d 1042, 1045 (9th Cir. 2011) (citing Swarthout v. Cooke, 131 S.Ct. at 861-62). A state's misapplication of its own laws does not provide a basis for granting a federal writ of habeas corpus. Roberts v. Hartley, 640 F.3d at 1046. Even though Petitioner asserts that his claims are based on a right to substantive due process, it is recognized that there is no substantive due process right created by California's parole scheme; if the state affords the procedural protections required by Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1, 12 (1979) (an opportunity to review his records, be heard, and be given a statement of reasons for the decision), then the Constitution requires nothing more. Roberts v. Hartley, 640 F.3d at 1046.

Accordingly, Petitioner's substantive due process claim will be dismissed. Further, because it does not appear that Petitioner could allege a tenable substantive due process claim if leave to amend were granted, the claim will be dismissed without leave to amend.

C. Equal Protection

Petitioner alleges in a conclusional fashion that the hearing process denied him a right to have credits taken off his sentence

12

according to law because the retroactive use of the parole agency's rules and regulations violated Petitioner's "right of contract." (FAP, doc. 30, 35-36.)  Petitioner concludes that he thus suffered a violation of his right to the equal protection of the laws under the Fourteenth Amendment.

Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race, religion, or membership in a protected class subject to restrictions and limitations necessitated by legitimate penological interests.  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974); <u>Bell v. Wolfish</u>, 441 U.S. 520, 545-46 (1979).  The Equal Protection Clause essentially directs that all persons similarly situated should be treated alike.  <u>City of Cleburne, Texas v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985).  Violations of equal protection are shown when a respondent intentionally discriminates against a petitioner based on membership in a protected class, <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 686 (9th Cir. 2001), or when a respondent intentionally treats a member of an identifiable class differently from other similarly situated individuals without a rational basis, or a rational relationship to a legitimate state purpose, for the difference in treatment, <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000); <u>Engquist v. Oregon Department of Agriculture</u>, 553 U.S. 591, 601-02 (2008).

Here, Petitioner has not alleged that membership in a protected class was the basis of any alleged discrimination.  Petitioner has not alleged that there was any intentional treatment of Petitioner that was different from treatment of any similarly situated individuals.

Petitioner may be arguing that he has served longer than others who were sentenced for his offense.

However, legislation or regulations that discriminate based on characteristics other than race, alienage, national origin, and sex are presumed to be valid and must only be rationally related to a legitimate state interest in order to survive an equal protection challenge.  City of Cleburne, 473 U.S. at 440.  Prisoners who are eligible for parole are not a suspect class entitled to heightened scrutiny.  See, Mayner v. Callahan, 873 F.2d 1300, 1302 (9th Cir. 1989) (prisoners not a suspect class).  Further, public safety is a legitimate state interest, and under California law a prisoner's suitability for parole is dependent upon the effect of the prisoner's release on the public safety.  See, Webber v. Crabtree, 158 F.3d 460, 461 (9th Cir. 1998); Cal. Pen. Code § 3041(b).  California's parole system is thus both intended and applied to promote the legitimate state interest in public safety.

Finally, parole consideration is discretionary and does not provide the basis of a fundamental right.  Mayner v. Callahan, 873 F.2d at 1301-02.  The Supreme Court has compared the parole release

14

and parole revocation decisions as follows:

> The parole-release decision, however, is more subtle and
> depends on an amalgam of elements, some of which are
> factual but many of which are purely subjective appraisals
> by the Board members based upon their experience with the
> difficult and sensitive task of evaluating the
> advisability of parole release. Unlike the revocation
> decision, there is no set of facts which, if shown,
> mandate a decision favorable to the individual. The parole
> determination, like a prisoner-transfer decision, may be
> made

> "for a variety of reasons and often involve[s] no more
> than informed predictions as to what would best serve
> [correctional purposes] or the safety and welfare of the
> inmate." Meachum v. Fano, 427 U.S., at 225, 96 S.Ct., at
> 538.

> The decision turns on a "discretionary assessment of a
> multiplicity of imponderables, entailing primarily what a
> man is and what he may become rather than simply what he
> has done." Kadish, The Advocate and the Expert-Counsel in
> the Peno-Correctional Process, 45 Minn.L.Rev. 803, 813
> (1961).

Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,

442 U.S. 1, 9-10 (1979).

Here, Petitioner has not shown or even suggested how the

decision in the present case could have constituted an equal

protection violation.  Petitioner was given an opportunity to amend

his petition, but Petitioner has failed to state in the FAP specific

facts that point to a real possibility of constitutional error based

on the Equal Protection Clause.  Further, Petitioner has alleged no

facts suggesting that a tenable equal protection claim could be

stated if leave to amend were granted.  It appears that full

documentation of the disciplinary proceedings has been provided to the Court.  In light of this and in view of the nature of the parole suitability decision, it does not appear that Petitioner could state a tenable equal protection claim if leave to amend were granted.

Accordingly, Petitioner's equal protection claim will be dismissed without leave to amend.

### V.   Implied Contract and Ultra Vires Regulations

Petitioner alleges that Cal. Pen. Code § 2931, which was adopted with Proposition 7, created an implied contract which is being defeated by the parole agency's use of retroactive and ultra vires rules and regulations.  Petitioner argues that state law provided for uniformity in sentencing and was intended to facilitate a prisoner's knowledge of the exact punishment to be served for a crime.  Petitioner contends that the state courts wrongly interpreted petitioner's sentence as a life sentence and wrongly permitted the state parole agency to set his parole release date. Further, Cal. Pen. Code § 3041 conflicts with § 2931 and the rights created by § 2931, and the state's judicial power was wrongly delegated to a strictly ministerial agency.  (Doc. 30, 37-46.)

Petitioner points to excerpts of a sentencing transcript showing a statement concerning Petitioner's release.  (Doc. 30, 49, 120.)  Reference to the transcript shows that in the course of an unidentified speaker's address to the trial court, it was said that fifteen years to life would be appropriate, and the projected time

16

in custody advocated by the speaker was seven to ten years of actual incarceration before becoming eligible for parole, although it was noted that if the Petitioner were not rehabilitated, they could keep Petitioner in for additional time up to fifteen years or could revoke parole.  It is clear that the speaker was addressing the trial court.  (Id.)  Petitioner further admits that he received a court trial.  (Doc. 30, 1.)  Thus, it does not appear that Petitioner was promised a certain sentence in exchange for a plea or that other circumstances were present which would have made the statement concerning actual time in custody to be binding on the state; rather, it appears that the statements were made by counsel during the course of sentencing proceedings with respect to a possible sentence.

Petitioner has not established that the people or legislature of California intended to enter into a private, binding contract with Petitioner to release him on parole based solely on consideration of Petitioner's earned time credits pursuant to a past version of Cal. Pen. Code § 2931.  As previously noted, Petitioner had no free-standing, federally protected right to release on parole.  In this context, Petitioner's contention is essentially an argument that the state parole authority and state courts improperly applied California law.  However, this Court cannot review state law claims in this proceeding.  Petitioner's claim will be dismissed without leave to amend.

17

VI.   Denial of Legislative Intent

Petitioner argues that the retroactive application to Petitioner of parole rules and regulations defeated a legislative declaration in Cal. Pen. Code § 1170(a)(1) to the effect that the purpose of imprisonment for crime is punishment, and that uniformity of sentences may be achieved best by determinate sentences. Petitioner argues that the governing state law did not permit different punishments for the same crime committed by different offenders, and that improper standards of statutory construction were followed.  (Doc. 30, 46-50.)  Again, this claim is a state law claim to the effect that the state parole agency and courts wrongly interpreted or applied California law.  Thus, it will be dismissed without leave to amend.

VII.   Miscellaneous, Repetitive Claims

The Court notes that Petitioner argues in this instance, and in connection with all his claims, that he has suffered a violation of his rights to due process and equal protection as well as an ex post facto violation.

The legal elements of those claims have previously been set forth.

Petitioner's numerous state law claims or sub-claims do not create a separate liberty interest or other form of legal entitlement upon which Petitioner could rest due process or equal protection claims.

18

To the extent that Petitioner argues that the BPH's denial of parole was arbitrary, the Court takes judicial notice of the transcript of the parole suitability proceedings that was part of the originally filed petition.  The Court may take judicial notice of court records.  Fed. R. Evid. 201(b); United States v. Bernal Obeso, 989 F.2d 331, 333 (9th Cir. 1993); Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir. 1981).  The transcript reflects that Petitioner appeared with counsel at the hearing before a commissioner and deputy commissioner of the BPH; had an opportunity to correct or clarify the record; discussed his commitment offense (killing and burying a wealthy woman and thereafter converting her funds) with the panel members; and was present when the panel announced the reasons for their decision, namely, that Petitioner posed an unreasonable risk of danger to society or a threat to public safety if released because of the cruel and callous commitment offense committed against an elderly victim with whom Petitioner was in a relationship of trust, Petitioner's failure to participate sufficiently in self-help programs related to alcohol, and Petitioner's criminal record. (Pet., doc. 1, 80-162.)  The proceedings demonstrate that the panel gave Petitioner all process that was due, considered pertinent suitability factors, and concluded on the basis of those factors that Petitioner was not suitable for parole.  The transcript forecloses a claim that the panel acted arbitrarily.

With respect to Petitioner's miscellaneous allegations that he suffered a violation of the Ex Post Facto Clause, the Court reiterates that Petitioner has not demonstrated that any specific, retroactively applied provisions created a sufficient risk of increasing the punishment for Petitioner's crimes.  The mere fact that Petitioner has continued to serve his sentence beyond the minimum point at which he might have first been found suitable for parole does not demonstrate the required risk of increased punishment; the record does not foreclose a reasonable conclusion that Petitioner's own behavior and history are responsible for the BPH's conclusion that Petitioner was not suitable for release on parole.

In summary, Petitioner has not set forth facts that that point to a real possibility of constitutional error.  Petitioner was given an opportunity to file a first amended petition to allege an ex post facto claim; instead, Petitioner repeated all or almost all of his previous claims, but he has not stated facts sufficient to point to a real possibility of constitutional error or to indicate that he could state a tenable claim if leave to amend were again granted.

Accordingly, the petition will be dismissed without leave to amend.

VIII.   <u>Certificate of Appealability</u>

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals

20

from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court.  28 U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).  A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right.  § 2253(c)(2).  Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 336 (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right or that jurists of reason would find it debatable whether the district court was correct in any procedural ruling.  <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong.  <u>Id.</u>  It is necessary for an applicant to show more than an absence of frivolity or the existence of mere good faith; however, it is not necessary for an applicant to show that the appeal will succeed.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 338.

A district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing Section 2254 Cases.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.

Accordingly, the Court will decline to issue a certificate of appealability.

IX.  <u>Disposition</u>

In accordance with the foregoing analysis, it is ORDERED that:

1)  The petition for writ of habeas corpus is DISMISSED without leave to amend; and

2)  The Court DECLINES to issue a certificate of appealability; and

3)  The Clerk is DIRECTED to close the case.


IT IS SO ORDERED.

Dated:   **June 26, 2013**            /s/ *Barbara A. McAuliffe*

UNITED STATES MAGISTRATE JUDGE